**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Dwayne Sharun, | |
|      Plaintiff, | |
| v. | Case No. 21 C 1962 |
| CF Industries Employee Services, LLC, | Hon. LaShonda A. Hunt |
|      Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dwayne Sharun sued his former employer, Defendant CF Industries Employee Services, LLC, alleging age discrimination (Count I) and retaliation (Count II) after his termination as part of a department reorganization. Following discovery, the parties agreed to dismissal of the retaliation claim with prejudice (Dkt. 55) and Defendant filed a motion for summary judgment on the remaining age discrimination claim (Dkt. 56). For the reasons that follow, Defendant's motion [56] is granted.

**BACKGROUND**

The facts are taken from the parties' Local Rule 56.1 Joint Statement of Undisputed Material Facts (Dkt. 57) and any disputed facts raised in their respective briefs.[1] In February 2013, Plaintiff was hired at the age of 42 as Defendant's Manager of Regional Sales in Canada. In August 2014, Plaintiff was promoted to West Regional Sales Manager. In that role, Plaintiff reported

---

[1] This case was originally assigned to Judge Ellis who requires parties moving for summary judgment to file a joint statement of undisputed facts. *See* Judge Sara L. Ellis Case Procedures, https://www.ilnd.uscourts.gov/judge-info.aspx?VyU/OurKKJRDT+FUM5tZmA==. Plaintiff then filed an additional Rule 56.1 Statement (Dkt. 60), despite Judge Ellis's standing instruction that parties are not permitted to file separate statements. *Id.* This case was reassigned to Judge Hunt on June 2, 2023 (Dkt. 61). As such, the Court has reviewed Plaintiff's additional Rule 56.1 Statement and concludes that nothing in it changes this analysis. Furthermore, consistent with Judge Ellis's procedures, the Court has also considered any disputed facts that the parties raised in their briefing. *Id.*

directly to Brett Nightingale, Vice President of Sales. Nightingale reported to Bert Frost, Senior Vice President of Sales, Market Development, and Supply Chain.

During his tenure as a Regional Sales Manager, Plaintiff received annual performance appraisals that generally reflected he was meeting expectations and experiencing success, but also included feedback suggesting that Plaintiff needed to improve his management and leadership skills. For example, in 2015, Plaintiff was advised to "continue to develop key employees by listening and guiding them from a leadership perspective." (Def. Mem. at 2, Dkt. 58). In 2016, Plaintiff was told to "focus on 'managing down' and improve from a training and mentoring standpoint." (*Id.*). In 2017, Plaintiff's appraisal indicated his greatest challenge was managing less experienced employees, and thus Defendant recommended he attend seminars or read books on the topic. Finally, in 2018, Plaintiff's appraisal stated that he needed to "improve coaching and managing employees who are less experienced and may not have the same work mindset" as Plaintiff. (*Id.* at 3). Still, in 2018, Defendant granted Plaintiff an equity award, in recognition of his significant past and anticipated future contributions and touted Plaintiff as a "top performer." (JSOMF at Ex. 4, Dkt. 57-4).

Plaintiff claims that in 2017 or 2018, he was instructed by Nightingale to fire Dick Miller, an employee in his late sixties. Plaintiff was Miller's direct supervisor and did not believe there were grounds to terminate him. According to Plaintiff, Nightingale said Miller was "old" and "needed to go" and Plaintiff believed Defendant wanted to replace Miller with someone in his late twenties or early thirties. (Plt. Resp. at 2, Dkt. 59). Defendant disputes that Plaintiff has accurately characterized those events based on his cited deposition testimony. (Def. Reply at 8-9, Dkt. 63). (*See also* Plt. Sur-Reply at 1-2, Dkt. 68 *and* Def. Resp. at 2, Dkt. 69).

In early 2019, Defendant decided to reorganize the Sales and Supply Chain Department where Plaintiff worked and reduce the number of regions from three to two. At that time, there were three Regional Sales Managers (RSM), which included Plaintiff. Defendant also decided to shift the RSM role from selling directly to customers to training, guiding, and motivating sales representatives. Nightingale was responsible for evaluating five internal candidates for the two resulting RSM positions. Those candidates and their positions/ages were Plaintiff, Central RSM[2] (48 years old); Michelle Fenty, Eastern RSM (age unknown), Zach Kutch, UK Commercial Operations Manager (age 35), Tim Hanrahan, UAN Product Manager (age 27), and Kelly Ehmke, Western RSM (age 48). (Def. Mem. at 4-5, Dkt. 58).

To conduct the evaluation, Nightingale utilized a form titled "Regional Sales Manager Assessment," and assigned numerical values to each candidate on a plethora of criteria divided into three main categories: Customer Focus, Team Development, and Personal Development. (JSOMF, Ex.8 at Ex. A, Dkt. 57-8). In scoring candidates on a scale of 1 (lowest) to 5 (highest), Nightingale relied upon his personal knowledge (he had directly managed Plaintiff, Fenty, Ehmke, and Kutch at some point), as well as discussions with their managers and peers and his review of their performance appraisals. According to Nightingale, he input his numerical ratings into the RSM Assessment charts; however, he did not create any formal backup or separate files explaining the basis for those numbers. Frost and a human resources representative reviewed the numerical ratings that Nightingale assigned to each candidate but did not alter them.

Fenty received the highest score with 68, Kutch and Hanrahan finished second and third with scores of 65 and 64, respectively, and then Ehmke was next with a score of 42, and finally

---

[2] The Court notes that the parties refer to Plaintiff as both a West RSM and a Central RSM in their JSOMF. (*Compare* JSOMF at 1-2 and JSOMF at 6). For purposes of this opinion, whether Plaintiff was a West or Central RSM prior to the reorganization is immaterial.

Plaintiff finished last with a score of 40. After Fenty accepted a job in a different department, Kutch and Hanrahan were selected for the RSM positions. Plaintiff alleges that Hanrahan did not have any sales experience or any employees directly reporting to him when he was selected to replace Plaintiff.

In total, 6 of 89 employees were terminated in the reduction in force (RIF), including Ehmke and Plaintiff; only one employee was under the age of 40. The RIF reduced the average age of employees in the Department from 40 to 39. After the RIF, Defendant retained 37 employees over the age of 40 and 46 employees under the age of 40. In March 2019, Nightingale was 40 years old, and Frost was 54 years old.

At the time his employment ended, Plaintiff was almost 49 years old. He described his termination as coming "out of the blue" since he had not been placed on any performance improvement plan nor had he been told that his job was in jeopardy. Plaintiff points out that Defendant had identified him as having a "9-Box Rating" of "Valued Contributor." (JSOMF, Ex. 9). That document titled "Sales & Supply Chain Reorg" also identifies the other terminated RSM, Ehmke, as such, while including both of them on the list of "[e]mployees recommended to exit the organization." (*Id.*). Plaintiff states that he was not given an opportunity to work under any alternative arrangement or provided with a reason for his termination.

Plaintiff further asserts that after his termination, Frost made a comment to the sales representatives that customers would like the new "young" and "diverse" sales team. (Plt. Resp. at 2). Plaintiff admits he did not hear Frost make any such comment, though. In 2020, Hanrahan resigned, opening a RSM position for which Plaintiff believes he should have been considered. However, Defendant elected not to consider external candidates for the role.

This lawsuit eventually followed, with Plaintiff alleging age discrimination and retaliation, citing his replacement with a much-younger and less-experienced employee (Hanrahan) and alleged comments and actions by Defendants indicating bias against older employees. This summary judgment motion is fully briefed and ripe for resolution.

## **LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial," *Celotex*, 477 U.S. at 324, and support their position with "more than a scintilla of evidence." *Conley v. Vill. of Bedford Park*, 215 F.3d 703, 709 (7th Cir. 2000). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. All "justifiable" inferences are drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Runkel v. City of Springfield*, 51 F.4th 736, 741 (7th Cir. 2022) (non-moving party receives "benefit of conflicting evidence" as well as "any favorable inferences that might be reasonably drawn from the evidence."). Additionally, a court must refrain from weighing evidence or making credibility determinations. *Johnson v. Advocate Health & Hosps., Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citation omitted).

## **DISCUSSION**

The Age Discrimination in Employment Act (ADEA) protects workers who are over the age of 40, and makes it unlawful for an employer to, among other things, "discharge any individual

or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). *See Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018). "To succeed in an ADEA claim, a plaintiff must establish that he would not have received adverse treatment but for his employer's motive to discriminate on the basis of his age." *Richter v. Hook-SupeRx, Inc.*, 142 F.3d 1024, 1027 (7th Cir. 1998); *see also Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 393 (7th Cir. 1998) ("Although age need not be the sole reason for the discharge, the claimant must show that, but for his employer's motive to discriminate against him on the basis of his age, he would not have been discharged.").

"An ADEA plaintiff may proceed by introducing direct or circumstantial evidence that [his] employer took an adverse action against [him] because of [his] age." *Carson v. Lake Cty., Ind.*, 865 F.3d 526, 532-33 (7th Cir. 2017). Alternatively, a plaintiff may prove age discrimination through the burden-shifting method articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Carson*, 865 F.3d at 533. Under *McDonnell Douglas*, a plaintiff must establish a *prima facie* case of discrimination by showing that "(1) he belongs to a protected class; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) another similarly situated employee outside of his protected class received better treatment from the employer." *Igasaki v. Ill. Dep't of Fin. and Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021). If a plaintiff meets those requirements, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse action. *McDonnell Douglas*, 411 U.S. at 802. If the employer is successful, the burden then shifts back to the plaintiff to demonstrate that the employer's proffered reason is pretextual. *Igasaki*, 988 F.3d at 957 (quoting *Purtue v. Wis. Dep't of Corr.*, 963 F.3d 598, 602 (7th Cir. 2020)).

In 2016, the Seventh Circuit explained that in employment discrimination cases, courts should not distinguish between direct and indirect evidence. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Instead, "all evidence belongs in a single pile and must be evaluated as a whole," because "evidence is evidence." *Id.* at 765, 766. *Ortiz* "[did] not concern *McDonnell Douglas* or any other burden-shifting framework" and therefore remains "consistent with *McDonnell Douglas* and its successors." *Id.* at 766. Plaintiff indicates here that he "is submitting this case under the *Ortiz* . . . standard—not under *McDonnell-Douglas*." (Plt. Resp. at 7). But *Ortiz* did not displace *McDonnell Douglas*. *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017) ("both before and after *Ortiz*, *McDonnell Douglas* is a means of organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases."); *Podrebarac v. McDonough*, No. 21 C 2552, 2023 WL 2915405, at *5 (N.D. Ill. Apr. 12, 2023) ("the *McDonnell Douglas* burden-shifting framework remains a useful method to analyze discrimination claims").

Ultimately, the Court is guided by consideration of "whether the evidence would permit a reasonable factfinder to conclude that plaintiff's . . . [age] caused [his] discharge." *Ortiz,* 834 F.3d at 765. In their briefing, though, both sides here have focused their arguments on the question of pretext; thus, *McDonnell Douglas* remains helpful for evaluating Plaintiff's claim. Defendant does not contest that Plaintiff can establish a prima facie case of age discrimination. (Def. Mem. at 8, n.2). Furthermore, Defendant has met its burden of offering a legitimate non-discriminatory reason for the adverse employment action—the RIF that reduced the number of RSMs and changed the nature of the position. Thus, the only disputed issue is whether Defendant's purported reason for selecting Plaintiff for termination was pretextual.

Pretext "means a lie, specifically a phony reason for some action." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995). "In order to show that the employer's stated, nondiscriminatory reason for firing him is pretextual, the plaintiff must present evidence suggesting that the employer is dissembling. . . . The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011). Pretext may be established in two different ways: "directly with evidence that [the employer] was more likely than not motivated by a discriminatory reason, or indirectly by evidence that the employer's explanation is not credible." *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 983 (7th Cir. 1999) (quoting *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1039 (7th Cir. 1993)). "Indirect evidence of pretext showing that an employer's proffered reasons are not credible may be made by demonstrating that the reasons are factually baseless, were not the actual motivation for the discharge, or were insufficient to motivate the discharge." *Id.*

Plaintiff raises a number of arguments here, but after evaluating the entirety of the evidence as it must, the Court finds Plaintiff has not presented sufficient evidence from which a reasonable juror could infer that Defendant terminated him because of his age.

First, Plaintiff contends that Defendant failed to provide adequate documentation to support the reorganization plan to eliminate one region and shift the nature of the RSM role from direct customer sales to employee supervision through coaching and mentoring. He cites *Dunn v. Nordstrom*, where the Seventh Circuit found that a defendant's "apparent inability to produce any documentary—rather than testimonial—evidence" relating to an across-the-board demotion of certain employees was "troubling because one would expect a large corporation to document the decision to demote so many employees." 260 F.3d 778, 785-86 (7th Cir. 2001). But Plaintiff

ignores *Hague v. Thompson Distribution Co.*, in which the Seventh Circuit distinguished *Dunn* and clarified, "in arguing that a lack of documentation supports a finding of pretext, the plaintiffs confuse [defendant's] burden with their own burden." 436 F.3d 816, 826 (7th Cir. 2006). "An employer's burden is a burden of production (not the burden of proof)" which is "not difficult to satisfy." *Id.* (citation omitted). To meet its burden, Defendant "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Id.* at 826-827 (*citing Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 257 (1981)).

Here, Defendant has done just that by offering deposition testimony from decisionmakers and supporting documents that corroborate the reorganization plan, including the reduction of RSM positions from three to two. As in *Hague*, Defendant has satisfied its burden of production. 436 F.3d at 827 (finding deposition testimony explaining several lawful reasons justifying the firing of the five plaintiffs sufficient). Plaintiff's speculation that more detailed and extensive documentation supporting the reorganization plan should exist is not enough to "call into question the veracity of [defendant's] proffered reasons" or "create an inference of pretext." *Id. See also Cleveland v. Porca Co.*, 38 F.3d 289, 295 (7th Cir. 1994) ("Statements of 'beliefs' or 'opinions' are insufficient to create a genuine issue of material fact.").

Next, Plaintiff argues that Defendant's decision to terminate Plaintiff is "practically nothing but . . . 'inaccuracies or inconsistencies.'" (Resp. at 8) (citing *Baker v. Macon Resources, Inc.*, 750 F.3d 675, 677 (7th Cir. 2014)). Contrary to Plaintiff's assertion, Defendant has provided support to buttress its decision to let Plaintiff go as part of the RIF. For the four years that Plaintiff was a RSM, his annual performance appraisals included feedback on the need to improve his coaching and mentoring skills. True, Plaintiff was a valued contributor and received mostly

positive feedback, along with an equity award in 2018 for his work in customer sales and relations. But when Defendant reorganized the Sales and Supply Chain Department, it envisioned a new role for its RSMs involving more coaching of sales representatives, rather than direct salesmen to customers. Nothing is inconsistent about hiring individuals that Defendant felt best positioned to succeed in such a role, nor is there anything inconsistent about Defendant determining that Plaintiff was not one of those individuals. *See Marnocha v. St. Vincent Hosp. and Health Care Ctr., Inc.*, 986 F.3d 711, 721 (7th Cir. 2021) ("That the individuals ultimately hired were better candidates is a legitimate, nondiscriminatory reason for refusing to hire a plaintiff.") (internal quotations and citation omitted). The Seventh Circuit has acknowledged that, in reductions of force, "it is not pretextual to terminate an individual perceived to be a weak performer in an organization even if that individual's performance could also be characterized as satisfactory or adequate." *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 694 (7th Cir. 2006).

Plaintiff nonetheless takes issue with the method Defendant used to evaluate who should go, contending that the lack of "formal backup" for the numbers Nightingale assigned to each candidate and explanatory notes and files in support of the numerical values further constitute "inaccuracies or inconsistencies" from which a jury may infer pretext. (Plt. Resp. at 8-9). Consequently, Plaintiff urges this Court to infer that Defendant's subjective evaluations must indicate that Plaintiff was terminated because of his age. But "[e]mployers may make . . . subjective assessments of their employees without violating anti-discrimination laws," *Jackson*, 176 F.3d at 985, and none of Defendant's actions here raise suspicions of discriminatory animus. Defendant conducted a RSM Assessment and after evaluating five candidates for the two open positions, determined that the lowest scorers would be terminated. Plaintiff's opinion that he was more qualified for the position than the other candidates is irrelevant, as "[i]t is well-settled that a

Case: 1:21-cv-01962 Document #: 73 Filed: 06/24/24 Page 11 of 13 PageID #:520

plaintiff's mere self-assessment is insufficient to establish a pretext for discrimination." *Rooks v. Girl Scouts of Chi.*, No. 95 C 206, 1995 WL 562126, at *7 (N.D. Ill. Sept. 21, 1995), *aff'd*, 95 F.3d 1154 (7th Cir. 1996). "Put differently, past positive evaluations do not guarantee future employment. Nor does such evidence, without more, show discrimination." *See Igasaki v. Illinois Dept. of Fin. and Prof. Regulation*, 988 F.3d 948, 959 (7th Cir. 2021).

Plaintiff clearly disagreed with Defendant's consistent criticism of his coaching, mentoring, and leadership skills as an RSM. But Plaintiff's "belief that he was performing his job adequately is not relevant to the question of whether [Defendant] believed it had a legitimate, non-discriminatory basis to terminate him." *Lauth v. Covance, Inc.*, 863 F.3d 708, 715-16 (7th Cir. 2017). Indeed, plaintiffs in similar situations have often failed to establish pretext. *See, e.g.*, *Dale v. Chi. Trib. Co.*, 797 F.2d 458, 465 (7th Cir. 1986) (affirming summary judgment for employer, who had communicated expectations to employee prior to the termination, and holding that "[plaintiff] must do more than challenge the judgment of his superiors through his own self-interested assertions.").

Next, Plaintiff points to multiple factors: (1) Frost's comments about customers liking a "young" and "diverse" team and greater interactions with younger employees; (2) Nightingale's alleged instruction to Plaintiff years earlier to fire a 60-plus year old employee; (3) Defendant's failure to consider hiring Plaintiff to fill Hanrahan's position after he resigned in 2020; and (4) the demographics of the Department after the reduction in force. The Court briefly disposes of each argument.

Regarding Frost's comment, Plaintiff alleges it was made to the sales team after his termination. In other words, Plaintiff did not hear it, and more importantly, Plaintiff did not submit an affidavit from someone who did. Putting to the side the question of whether such hearsay

testimony has any probative value on a summary judgment motion, at the end of the day, while a younger and more diverse team may have resulted from the reorganization, Frost's comment does not establish that the reduction in force was for the *purpose* of creating a younger team. And mere "socializing with someone who is not a member of a protected class does not demonstrate bias against those who are in the protected class." *Merillat*, 470 F.3d at 694.

Plaintiff makes much of an alleged instruction from Nightingale to fire Miller, an older employee. At his deposition, Plaintiff was asked about his interrogatory response stating that he was told to fire Miller who was "old and needed to go." (JSOMF, Ex. 2 at 61, Dkt. 57-2). But Plaintiff's testimony appears to be conflicting in that he claims to have fired Miller but later suggests that Nightingale did so. (*Id.* at 61-62). In any event, the Court need not sort out which version of the story is correct, because even if the statement was made, "isolated comments that are no more than 'stray remarks' in the workplace are insufficient to establish that a particular decision was motived by discriminatory animus." *Merillat*, 470 F.3d at 694 (citation omitted). Plaintiff makes no effort to develop this theory and demonstrate a connection between alleged age-related statements in 2017 or 2018 about an employee significantly older than Plaintiff, and Plaintiff's own termination as part of a reduction in force in 2019.

Plaintiff's remaining arguments fare no better. After Hanrahan's resignation from the RSM role in 2020, Defendant stated it chose to consider internal personnel only to fill the position. Plaintiff has not come forward with evidence showing that is a lie. Finally, Plaintiff argues that the reorganization and RIF disproportionately affected older employees, but disparate impact alone cannot carry the day. The Seventh Circuit refused to "conclude that [a reduction in force] was a pretext for age discrimination solely because [the reduction in force] disproportionately affected employees protected by the ADEA. 'Our court generally has not found that statistical evidence

concerning terminated employees, without more, is relevant to our analysis of whether the articulated reasons for discharging [a] plaintiff were pretextual or discriminatory.'" *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1014 (7th Cir. 2000) (citing *Adreani*, 154 F.3d at 400). Moreover, the RIF insignificantly reduced the average age of the Department by only one year—from 40 to 39.

In sum, whether Defendant made a good decision in choosing Hanrahan and Kutch as RSMs is not for courts to consider. In fact, this Court rejects Plaintiff's invitation to evaluate the credibility of potential witnesses on summary judgment. *See Johnson*, 892 F.3d at 893 (citation omitted). "This Court does not sit as a super-personnel department that reexamines an entity's business decisions." *Dale*, 797 F.2d at 464. "[E]ven if [defendant's decision] exhibits poor business judgment or is erroneous," that is "not sufficient to establish pretext." *Pitasi v. Gartner Grp.*, 184 F.3d 709, 718 (7th Cir. 1999). All this Court asks is whether the evidence demonstrates that Defendant honestly believed the reason it offered for Plaintiff's termination. *Id.* Because Plaintiff has not identified grounds to infer that the reduction in force was false or he was terminated for some other prohibited reason, he has failed to create a triable issue of fact on pretext.

## CONCLUSION

For all the foregoing reasons, Defendant's motion for summary judgment [56] is granted. Judgment is entered in favor of Defendant.

**DATED**: June 24, 2024                    **ENTERED**:


_____
LASHONDA A. HUNT
United States District Judge

13